IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LEE A. MELLAND,

                                                    OPINION AND ORDER

                    Plaintiff,

                                                    10-cv-804-bbc

          v.

JANET NAPOLITANO, Secretary,
Department of Homeland Security and
TRANSPORTATION SECURITY ADMINISTRATION,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        Plaintiff Lee Melland worked as a security officer for defendant Transportation

Security Administration at the Dane County Regional Airport from September 2002 until

she was terminated in September 2009.  In this civil action for monetary and injunctive

relief, plaintiff contends that the Transportation Security Administration violated Title VII

of the Civil Rights Act of 1964 when it took several adverse employment actions against her

because of her gender and in retaliation for her complaints to the Equal Employment

Opportunity Commission.   Defendants have moved for summary judgment on all of

plaintiff's claims; the motion is before the court for decision.  Dkt. #43.

        I am granting the motion because no reasonable jury could conclude that defendants

took any adverse action against plaintiff because of her gender or her protected activities;

1

rather, the uncontradicted evidence shows that defendants reprimanded plaintiff and ultimately terminated her because her supervisors believed that she was dishonest and that she had violated defendants' security policies.

From the parties' proposed findings of fact, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

### A.  The Parties

Defendant Transportation Security Administration is an agency of the United States Department of Homeland Security.   Defendant Janet Napolitano is Secretary of the Department.  (Napolitano has no personal role in this lawsuit.  Thus, I will refer to the Transportation Security Administration as "defendant.").

Plaintiff Lee Melland worked for defendant as a supervisory transportation security officer at Dane County Regional Airport in Madison, Wisconsin from November 2002 until September 22, 2009.  Her job duties included supervising other transportation security officers, screening luggage and passengers, supervising security checkpoints and running screening "plays."  During the time plaintiff was employed at the airport, Jane Hemberger was the federal security director at the airport and David Ahlansberg was the assistant federal security director.  Both of them supervised plaintiff.

2

B.  Plaintiff's Interactions with Ahlansberg

1.  2004 and 2006 comments

Sometime in 2004, plaintiff was doing paperwork at a lectern and commented that it was a crazy day.  Ahlansberg responded by saying that she could not handle her day and as a woman, she ought to stay home.  Ahlansberg then laughed and said he was just joking. Sometime in 2006, Ahlansberg laughed at plaintiff and said that if she were not a female she would not have a problem lifting a heavy bag.  (Ahlansberg denies making either comment.)

2.  December 2007

In 2007, plaintiff applied for a position as a transportation security manager at Dane County Regional Airport.  She was not hired for the position.  On December 17, 2007, plaintiff saw Ahlansberg in the break room and asked whether he could provide her any feedback on the interview.  Ahlansberg responded that there was nothing to discuss because he did not have the interview materials.  (Plaintiff says that as they left the break room, Ahlansberg accused her in a stern and loud voice of being upset that she did not get the promotion.  Ahlansberg denies this.)  Plaintiff told him she understood that the person who was chosen had more experience than she did.  Plaintiff then told Ahlansberg that in March 2006, he had told her that she was going to be nothing more than a supervisor and trainer. Plaintiff said that she had reported his comment to Hemberger and another manager. Ahlansberg denied making the comment and told plaintiff she was lying.  (Plaintiff says that

3

Ahlansberg became upset, stomped his feet, clenched his fists, pointed and hollered at her, started "swinging his arms," told plaintiff that this was "bullshit" and said that she was going to regret this and her career was over. Ahlansberg denies this.)

On December 18, 2007, Ahlansberg gave plaintiff a written memorandum recounting their December 17 interaction. The document did not include a description of Ahlansberg's alleged hostile behavior. He asked plaintiff to sign the document and she refused. (Plaintiff says that on December 18, Ahlansberg told her that she needed to find the right man so she did not have to come to work anymore. Ahlansberg denies saying this.)

A few months later, someone kicked plaintiff's chair while she was writing. Plaintiff believes it was Ahlansberg because she saw him walking nearby. Ahlansberg denies kicking her chair.

3. 2009 telephone conversation

On June 4, 2009, plaintiff called Ahlansberg for permission to leave work early so she could see a doctor about her back. Ahlansberg asked how many supervisors would be at the airport if she left. He told her that if she really needed to go home she should do so. (Plaintiff says Ahlansberg also told her she was overly accident prone, had been out too much with previous injuries and needed to find a new job. Ahlansberg denies saying those things.)

## C. January 2008 Smoking Investigation

On January 15, 2008, plaintiff and Lynn Kalupa, a supervisory transportation security officer from the La Crosse Municipal Airport, drove in a government vehicle from Madison to Chicago for training. After the trip, Kalupa told the assistant federal security director in La Crosse, Dave McMahon, that plaintiff had smoked four or five cigarettes in the car, despite Kalupa's warning her that it was against defendant's policy to smoke in a government vehicle. Kalupa also reported that plaintiff used a scented spray to disguise the smell. McMahon called Ahlansberg at the Dane County Regional Airport and told him about Kalupa's allegations. Ahlansberg reported the incident to Hemberger, the federal security director at the airport.

Sometime after Hemberger was notified about the smoking allegation, she contacted an employee who had used the same vehicle the day after plaintiff and Kalupa had returned it and asked him whether he had noticed any smell of smoke inside the vehicle. The employee told Hemberger that the car did not smell like smoke, but did smell like someone had sprayed scented air freshener in it. On January 21, Hemberger called plaintiff and asked her about the incident. Plaintiff denied that she smoked inside the vehicle and suggested that Kalupa was making up the allegation out of "meanness." Hemberger said she needed to be able to trust her employees and encouraged plaintiff to tell the truth.

Hemberger assigned Richard Spencer to investigate the smoking allegations. Spencer was a new transportation security manager who had started working at the Dane County

5

Regional Airport on January 6, 2008.  The investigation was one of his first assignments upon arriving at the airport and his first work-related interaction with plaintiff.

On January 21, 2008, plaintiff prepared two separate statements for Spencer in response to the smoking allegation.  In the first statement, plaintiff stated that

> At no time during the trip, did I smoke a cigarette within the confines of the vehicle. . . Kalupa and I had several conversations during the trip and I do not recall her once stating anything to me about regulations of not smoking within the government vehicle.  It was not one of our topics.

Dkt. #64-4.  In the second statement, issued on the same day, plaintiff stated

> I do not recall lighting up a cigarette during my drive . . . . If I did so, I am very sorry.  It was not my intent. . . But if Lynn states that I did it, I am not going to rebut it. . . I truly don't remember lighting up a cigarette . . . Again if I did, I am not going to rebut it.  I just don't remember doing it!!!"

Dkt. #64-3.  In the second statement, plaintiff recalled several details about the trip to Chicago and admitted that Kalupa made a comment about defendant's policy against smoking inside the car.  Plaintiff stated that she thought Kalupa made the comment because smoke entered the car when plaintiff was smoking outside.  Also, plaintiff admitted that she told Kalupa that if the smell was bad, she would "try to fix it" with body spray that was in her purse.  Id.

On January 22, 2008, Hemberger and Ahlansberg met with plaintiff in Hemberger's office.  At the meeting, plaintiff continued to assert that she could not remember whether she smoked in the government vehicle.  Both Ahlansberg and Hemberger told plaintiff that they did not believe that she could remember several specific details about the trip but could

6

not remember smoking inside the car four or five times. They told her she should tell the truth and admit to the smoking policy violation. At some point, Hemberger incorrectly accused plaintiff of smoking in a vehicle during a 2007 convention that plaintiff did not attend. (The parties dispute whether Hemberger left her office for a brief period during the meeting. Defendant says that both Ahlansberg and Hemberger were in the office during the entire meeting. Plaintiff says that at one point, Hemberger left the office for a phone call, Ahlansberg pulled his chair next to hers, leaned toward her, pointed his finger toward her face and told her to just admit smoking because it would make things easier for her. The parties also dispute whether Hemberger and Ahlansberg told plaintiff during the meeting that she would lose her training duties as an assistant training instructor if she did not admit to smoking in the car.)

On January 23, 2008, plaintiff provided another written statement to Spencer as part of his investigation. Dkt. #64-2. Plaintiff stated that her memory of the Chicago trip was impaired because of an accident. She stated that she respected Kalupa, had no ill will against her and would not dispute her allegations.

Spencer concluded that plaintiff had smoked in the government vehicle after being warned about defendant's policy and had attempted to cover up her misconduct by spraying the inside of the vehicle and lying about her ability to remember whether she had smoked. He believed plaintiff's behavior was particularly egregious because she had accused another employee of fabricating the story. Spencer concluded that plaintiff should be formally

reprimanded because as a supervisory security officer, she held a position that required her to be honest, trustworthy and an example for her fellow and subordinate officers. Spencer told Ahlansberg and Hemberger that he had decided to issue plaintiff a formal letter of reprimand for violating defendant's policy by smoking in a government vehicle and for failing to be forthcoming about her actions. They reviewed the investigative statements and agreed with Spencer's decision. Spencer issued the letter on February 11, 2008.

### D. Effects of the Smoking Incident and Letter of Reprimand

#### 1. Supervisor of the year and advisory council

During December 2007, plaintiff received the highest number of votes from her subordinates for Dane County Regional Airport's supervisor of the year award for her shift. The awards ceremony was scheduled for January 24, 2008, during the investigation of the smoking incident. Hemberger, who had final approval authority over all defendant's awards at the airport, decided that plaintiff should not receive the supervisor of the year award because she believed plaintiff was being dishonest about the smoking incident. The award was given to the supervising officer who received the second highest number of votes.

The Dane County Regional Airport has an advisory council that advises management on workplace issues. An employee who receives the supervisor of the year award can be a member of the advisory counsel. Because plaintiff was denied the award, she did not qualify for membership on the advisory council.

8

2. Security training instructor position

At the time of the smoking incident, plaintiff and Kalupa had applied for a security training instructor position at Dane County Regional Airport. Security training instructors are responsible for training all of defendant's new hires. Hemberger and Ahlansberg decided that they were not comfortable interviewing or hiring plaintiff for the position because of her recent letter of reprimand and their belief that she had been dishonest.

In May 2008, Kalupa was hired for the position and assumed most training duties. Plaintiff continued to be scheduled as a instructor for training sessions from March through December 2008.

3. Plaintiff's annual evaluation

Security officers working for defendant receive a Performance Accountability and Standards System evaluation every year consisting of various performance categories that are scored either by supervisors and or standardized testing. The final evaluation results in a score that affects potential raises and bonuses. No personnel at Dane County Regional Airport has any involvement in setting the evaluation points system or monetary compensation received by employees.

In 2007, plaintiff's evaluation was conducted by former transportation security manager Jennifer Bennett. In 2007, plaintiff had not received any discipline and Bennett awarded plaintiff 6 out of a possible 6 points in the "readiness for duty" category, which

takes into consideration whether the employee has been on progressive discipline in the proceeding year. She scored 24.42 out of 29.97 possible points on the "technical proficiency" category, which comprises a series of skill tests that are administered and evaluated by outside contractors, not by any personnel from Dane County Regional Airport.

In 2008, plaintiff's evaluation was conducted by Spencer. Plaintiff's overall score in 2008 was lower than her 2007 score. Spencer gave plaintiff 2.08 points out of an available 6.25 points in the "readiness for duty" category because of the letter of reprimand she had received after the smoking incident. With the exception of "readiness for duty," Spencer gave plaintiff scores in every category that were equal to or higher than scores given by Bennett in the 2007. The primary reason plaintiff's 2008 score was lower than her 2007 score was that she did not perform nearly as well on the technical proficiency portion of the evaluation in 2008, scoring 16.66 out of 31.25 possible technical proficiency points.

After receiving her evaluation, plaintiff received a 1% increase in pay and a $1000 bonus. At the time Spencer rated plaintiff, he had no idea what level rating she would receive and he did not have any information about corresponding pay raises or bonus awards.

E. Plaintiff's Complaint to the Equal Employment Opportunity Commission
and Subsequent Interactions with Hemberger

Plaintiff initiated contact with the Equal Employment Opportunity Commission on

10

February 12, 2008.  Defendant was notified of the contact on March 26, 2008.  She filed

a formal complaint with the commission on April 17, 2008, alleging gender discrimination,

retaliation for protected activity, hostile work environment and disability discrimination.

On October 15, 2008, plaintiff was at defendant's Dane County Regional Aiport

headquarters for training and Hemberger asked her to come into her office.  (The parties

dispute what happened next.  Plaintiff says that Hemberger asked her in a loud voice why

she was giving her the cold shoulder and why plaintiff hated everybody at the administrative

office.  Plaintiff says that Hemberger asked plaintiff about her EEO complaint and told

plaintiff she should think about applying for other jobs or take a transfer.  Defendant says

that Hemberger never mentioned plaintiff's EEO complaint and never told plaintiff she

should look for jobs outside the airport.  According to Hemberger, she simply asked plaintiff

if everything was all right and told plaintiff she had seemed uncommunicative lately.)

In March 2009, Hemberger encouraged plaintiff to apply for an assistant federal

security director position at the Milwaukee General Mitchell International Airport.  This

position did not exist at Dane County Regional Airport and would have been a promotion

for plaintiff.

## F.  Ahlansberg's Letter of Counseling

In October 2008, Ahlansberg received a non-disciplinary letter of counseling for

engaging in inappropriate and disrespectful conduct towards his employees.  The letter cited

several incidents in which Ahlansberg had allegedly behaved inappropriately at work, including an occasion in February 2007, when he suggested to a female employee that her babysitter was a child molester; in January 2008, Ahlansberg told a female employee that he would cut her off at the knees for wearing hiking boots that were not part of the official uniform; in February and March 2008, he yelled and pointed a finger in the face of male employees during meetings; and in February 2008, Ahlansberg told a female employee to get something to throw at another female employee who was not working to his satisfaction.

### G.  2009 Letter of Counseling

In June 2009, Spencer became concerned that supervisory transportation security officers were releasing their subordinate officers early from their work stations.  Defendant was legally responsible for personnel until they were off the clock, and Spencer did not want baggage screening officers outside the airport while they were still on duty.  Also, inconsistency in the release of officers had caused morale issues.  On more than one occasion during staff briefings, Spencer told evening shift supervisors not to release their officers from their work duty locations any earlier than 6:50 p.m., which was ten minutes before the end of the shift.  Releasing the officers at 6:50 p.m. would allow the officers to go to the break room, gather their belongings and exit the building no earlier than 7:00 p.m.

On June 15, 2009, Spencer saw baggage screening officers that plaintiff supervised leaving the airport before 6:50 p.m.  Later that day, Spencer emailed all of the supervisory

transportation security officers, reminding them not to release their officers from their work duty locations more than ten minutes before the end of the shift.

Sometime between June 16 and June 24, 2009, supervisory transportation security officer Dave Kruschke told Spencer that plaintiff was still releasing her officers early. Kruschke asked Spencer whether he should write a report about it and Spencer said he would investigate the matter himself. On June 24, Spencer went to the airport lobby to observe the end of the evening shift. Spencer saw plaintiff and her baggage screening officers exiting the lobby of the airport before 6:50 p.m. Plaintiff was one of the first officers to leave and did not see Spencer. One of plaintiff's baggage screening officers, Callie Meis, approached Spencer in the lobby and asked whether they were in trouble for leaving early. Meis told Spencer that plaintiff had released them early so they thought they could leave.

When Spencer confronted plaintiff, she told him that she had held the employees in baggage screening area 2 and they exited the airport from that location. She also said that the clocks must not be synchronized and that could be why the officers were released early. Spencer did not believe plaintiff's explanation because baggage screening area 2 was not operational at that time, it was not a work duty location, he knew the employees had exited from the breakroom and Meis had told Spencer that plaintiff said they could leave early. On June 28, 2009, Spencer issued a letter of counseling to plaintiff for failing to follow his directive not to release baggage screening officers early. A letter of counseling is not a formal disciplinary action and does not affect an employee's pay, benefits or employment status.

13

It is a written correction to place an employee on notice of unacceptable behavior.

### H. Sexual Harassment Investigation

On June 16, 2009, plaintiff reported to Michael Franczek, the administrative officer at Dane County Regional Airport, that she had overheard transportation security officers Traci Bacon and Tamera Bruggeman discussing a sexual comment that another officer, Jeff Winge, allegedly made to a female officer, Brennan Balistreri, in the terminal and in the presence of passengers.  Plaintiff told Franczek that lead transportation security officer Dave Paddock was present when Winge made the comment and had repeated it to Bacon. Franczek told  Ahlansberg of the allegation and told plaintiff to tell Spencer about the alleged comment.

Spencer met with plaintiff and told her he would be interviewing witnesses and that she should not talk to anyone about the investigation.  Spencer asked plaintiff to send Winge to him so that he could interview him first.  Winge denied that he made the alleged comment and told Spencer that he could not recall the event. When Spencer called plaintiff to send down another witness, plaintiff told Spencer that she had talked to Brueggeman about the incident.  (Plaintiff says she talked to Brueggeman before Spencer told her not to talk to anyone about it; defendant says that Spencer had already instructed plaintiff not to talk about the investigation at this point.)

On the evening of June 16, 2009, Paddock called plaintiff because Brueggeman told

14

him that plaintiff had reported Winge for sexual harassment. Initially, plaintiff told Paddock that she could not discuss the sexual harassment investigation. She then explained to Paddock that she reported the comment because it was inappropriate regardless whether anyone was offended. Paddock told plaintiff that he did not believe that he or Winge should be punished so he was going to "come up with something." Plaintiff told him to tell the truth.

On June 17, Paddock and Balistreri gave statements about the incident. Balistreri, the alleged victim of Winge's harassing comment, could not recall the specific comment. She reported that the statement had been made months before and she had taken no offense to it. Paddock reported that the comment Winge had made was not the same as the comment reported by plaintiff.

On June 18, Spencer contacted plaintiff with followup questions about the conflicting reports from plaintiff, Winge, Balistreri and Paddock. Plaintiff told Spencer that Paddock was changing his story. When Spencer asked plaintiff how she knew anything about Paddock's story, plaintiff stated that she had spoken with Paddock on the phone. Spencer told plaintiff she should have reported Paddock's statement to Spencer immediately.

After initially denying that he and plaintiff had talked, Paddock admitted calling plaintiff and talking with her on the phone about Winge's comment. Paddock said that plaintiff told him to deny that he had spoken with plaintiff if anyone asked.

On June 29, Bacon met with Spencer and told him that plaintiff was constantly

15

attempting to discuss the "Winge issue." She said that plaintiff had sought her out while she was walking in the parking ramp at the airport and showed Bacon her statement from the investigation in an attempt to convince Bacon to believe plaintiff's version of the story.

When Hemberger heard about the status of the investigation and the varying stories of the witnesses, she ordered Ahlansberg, Spencer and Melissa Bieri, the human resource specialist, to call a meeting with Paddock, Brueggeman, Bacon and plaintiff to try to get a clear understanding of their respective knowledge about the Winge comment. The meeting was held on July 1, 2009. Spencer told everyone present that the investigation should have been handled differently. Brueggeman apologized for her conduct. Paddock submitted a written statement to Spencer apologizing for his conduct. Plaintiff did not say anything during the meeting.

Because it was Bacon's regular day off, she did not attend the meeting. Instead, she met with Bieri and Ahlansberg the next day at Dane County Regional Airport headquarters. Bacon told Bieri and Ahlansberg that plaintiff was behaving irrationally and had contacted her numerous times about the sexual harassment investigation. On July 3, Bacon submitted an email statement regarding the conduct that she reported to Bieri and Ahlansberg.

Spencer was frustrated with the investigation and believed that plaintiff had disregarded his orders not to talk about it, thereby compromising the investigation. Spencer also believed that plaintiff never intended to tell him about her conversations with the other officers and believed that she had set a poor example for Bacon, Paddock and Brueggeman,

16

whom she supervised.

After completing his investigation, Spencer issued Brueggeman a letter of counseling and issued Paddock a letter of counseling and a two-day suspension from work. On July 22, 2009, Spencer issued plaintiff a proposed removal from federal service, citing plaintiff's conduct during the sexual harassment investigation and the prior letter of reprimand for lying about smoking inside the government vehicle.

### I. Plaintiff's Failure to Screen High-Risk Flight

On July 21, 2009, plaintiff was assigned to conduct various playbook screening exercises as part of her shift. The exercises, referred to as "plays," are specific assignments for screening and observation in and around the airport and are chosen by defendant's coordination center for each shift. At Dane County Regional Airport, the plays changed each day, with the exception of                                    which was considered the highest risk flight departing from the airport and was screened everyday.

On July 21, plaintiff and her playbook team were assigned to screen the        flight as part of their playbook. A separate behavior detection observation team was assigned to complete a different play on the flight. At the time plaintiff's team should have been at the gate to screen the flight, it was outside doing observation on the parking ramp. Because plaintiff's team was not at the gate and did not screen the flight, the behavior detection observation team could not complete its play. Under defendant's policy, if a playbook team

17

is unable to complete a play, it should notify the coordination center. The behavior detection observation team called the coordination center to report that it could not complete its play. Plaintiff never called the coordination center to explain why she had failed to screen the        flight. When she submitted her signed playbook schedule to the coordination center, she did not note that she had failed to screen the        flight.

On the morning of July 22, 2009, the coordination center supervisor notified Spencer and Ahlansberg that, according to the behavior detection observation team, plaintiff had failed to screen the        flight and had failed to notify the coordination center that she missed the play. Spencer checked with the behavior detection observation team, who confirmed that plaintiff's playbook team was not at the gate to screen passengers on the        flight. Plaintiff told Spencer that the reason she missed the play was because a gate agent told her the flight was delayed, so she had moved on to the next play. (The flight was not actually delayed.) Plaintiff admitted that defendant's protocol required her to remain at the gate to complete the play, even if the flight was delayed, or to ask for instructions from the coordination center.

## J. Plaintiff's Termination

After Spencer learned of plaintiff's screening and reporting infractions, he issued her a revised notice of proposed removal from federal service on July 27, 2009. Spencer

concluded that plaintiff presented a security risk because she did not follow rules and orders; she was dishonest; and she repeatedly failed to take responsibility for her own misconduct. Plaintiff could not be removed from federal service without Hemberger's approval. Ahlansberg and Hemberger reviewed the proposed removal of plaintiff, relevant reports and plaintiff's written responses.  They agreed with Spencer that plaintiff was dishonest and posed a security risk.

On September 22, 2009, defendant terminated plaintiff from her position at Dane County Regional Airport for the following written reasons:  (1) failure to conduct proper screening procedures; (2) failure to accurately report; (3) unprofessional behavior; (4) lack of candor; (5) failure to follow instructions; and (6) inappropriate behavior during an investigation.

## OPINION

Title VII, which applies to the federal government under 2 U.S.C. § 1311, prohibits employment discrimination because of gender and retaliation for complaining about gender discrimination. 42 U.S.C. § 2000e-2(a) (Title VII prohibits employment discrimination because of an individual's "sex""); 42 U.S.C. § 2000e-3 (Title VII prohibits retaliating against employee for "oppos[ing]" discrimination prohibited by statute or "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding" with EEOC).  Plaintiff contends that defendant retaliated and discriminated

against her when, over the course of two years, defendant issued her a letter of reprimand for smoking in a government vehicle; removed training duties from her; denied her a supervisor of the year award and membership on an advisory council; denied her an opportunity to interview for a security training instructor position; issued her an unfairly low performance rating; issued her a letter of counseling; and ultimately, removed her from federal service. Plaintiff also contends that the gender discrimination and retaliation she experienced at the Dane County Regional Airport were sufficiently severe or pervasive to create an abusive and hostile work environment.

Defendant has moved for summary judgment on all plaintiff's discrimination, retaliation and hostile work environment claims.


A. Discrimination Claims

Plaintiff may prove discrimination either directly by presenting either direct or circumstantial evidence of discrimination, or indirectly, using the burden-shifting approach in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Silverman v. Board of Education of the City of Chicago, 637 F.3d 729, 733 (7th Cir. 2011). Under both methods, the ultimate question is not whether the evidence "fit[s] into a set of pigeonholes," Carson v. Bethlehem Steel Corp., 82 F.3d 157, 159 (7th Cir. 1996), but simply whether a reasonable jury could find that the defendant discriminated against the plaintiff because of a characteristic protected by the statute, in this case her sex. Simple v. Walgreen Co., 511

F.3d 668, 670-71 (7th Cir. 2007) ("[T]the straightforward question to be answered in discrimination cases is whether the plaintiff has successfully demonstrated that she was the victim of . . . discrimination on the part of the employer.") (internal quotations omitted). Plaintiff contends that she can prove her discrimination claims under both methods.

1. Direct method

Plaintiff contends that she has enough circumstantial evidence of discrimination to defeat summary judgment using the direct method of proof.  Her circumstantial evidence of discrimination consists of "stray comments related to gender" made by Ahlansberg, Plt.'s Br., dkt. #66, at 4, including (1) his comment in 2004 that as a woman, plaintiff should stay home; (2) his comment in 2006 that plaintiff would not have a problem lifting a bag if she were not female; and (3) his comment on December 18, 2007 that plaintiff needed to find the right man so she did not have to come to work anymore.  Additionally, plaintiff contends that Ahlansberg's general attitude of hostility toward her and other female employees, as evidenced by the letter of counseling he received in 2008, proves that he has a discriminatory attitude toward women.  Plaintiff contends that because Ahlansberg played some role in each of the adverse actions taken against her, his disparaging comments about women are direct evidence that the adverse actions were motivated by discriminatory intent.

A plaintiff can prevail under the direct method "by constructing a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the

decisionmaker.'" <u>Rhodes v. Illinois Department of Transportation</u>, 359 F.3d 498, 504 (7th Cir. 2004) (quotation omitted). However, the circumstantial evidence "'must point directly to a discriminatory reason for the employer's action.'" <u>Id.</u> (quoting <u>Adams v. Wal–Mart Stores, Inc.</u>, 324 F.3d 935, 939 (7th Cir. 2003)). The court of appeals has stated on numerous occasions that a plaintiff cannot prove her case with "stray remarks" or "isolated comments" unless a decision maker made them "around the time of the decision" and "in reference to the adverse employment action." <u>E.g.</u>, <u>Petts v. Rockledge Furniture LLC</u>, 534 F.3d 715, 721 (7th Cir. 2008); <u>Hemsworth v. Quotesmith.Com</u>, 476 F.3d 487, 491 (7th Cir. 2007); <u>Steinhauer v. DeGolier</u>, 359 F.3d 481, 487–88 (7th Cir. 2004).

The fact that Ahlansberg was reprimanded for using inappropriate language with both male and female employees is not evidence of discriminatory intent. Also, Ahlansberg's alleged statements that plaintiff took too much time off and would not go far in the company are not evidence that Ahlansberg discriminated against plaintiff because of her gender. This is simply evidence of Ahlansberg's generally negative attitude and inappropriate treatment of employees.

Plaintiff provides only vague descriptions and no context for the three discriminatory remarks allegedly made by Ahlansberg in 2004, 2006 and 2007. Nonetheless, these remarks are some evidence of Ahlansberg's attitude toward women. However, when considered in conjunction with other facts in this case, these three discriminatory remarks alone are not sufficient to establish that any of the adverse employment actions identified by plaintiff were

22

motivated by discriminatory animus.  First, Ahlansberg was not the decision maker with respect to several of the adverse employment actions, including the denial of the supervisor of the year award; her performance rating and the letter of counseling issued in 2009.  In fact, Ahlansberg was not the sole decision maker with respect to any of the adverse employment actions and played a very minor role, if any, in plaintiff's ultimate termination.

Moreover, none of Ahlansberg's comments were made around the same time as any of the adverse employment actions.  Two of the remarks were made more than one year before the letter of reprimand was issued in 2008 and the third was made approximately two months before the letter.  Petts, 534 F.3d at 721 (decision maker's comment made more than one year before adverse action does not prove discrimination under direct method); Hemsworth, 476 F.3d at 491 (concluding that president's comment that employee who had suffered stroke looked tired and old was not sufficient to prove discrimination because comment was made more than one year before employee's termination); Markel v. Board of Regents of University of Wisconsin System, 276 F.3d 906, 910–11 (7th Cir. 2002) (finding supervisors' statements made "nearly two months" before employee's termination were not contemporaneous with termination and thus were not sufficient to prove discrimination); Gleason v. Mesirow Financial, 118 F.3d 1134, 1140 n.7 (7th Cir. 1997) (concluding that vice president's comment made "as much as three months" before termination was not sufficient to prove discrimination).  Additionally, plaintiff has not shown that any of the comments were made in connection with any of the adverse

employment actions. <u>Petts</u>, 534 F.3d at 722 (plaintiff "has not shown any other connection between the 'mother' comment and her termination. Thus, the 'mother' comment is insufficient to raise an inference of discrimination.").

In sum, plaintiff has failed to tie Ahlansberg's discriminatory statements to the employment actions about which she complains. Thus, the comments alone do not support the drawing of a reasonable inference of discriminatory intent with respect to the adverse actions.

2. <u>Indirect method</u>

Under the "indirect method," the plaintiff must establish a prima facie case of discrimination with evidence that: "(1) she is a member of a protected class, (2) her job performance met [the employer's] legitimate expectations, (3) she suffered an adverse employment action, and (4) another similarly situated individual who was not in the protected class was treated more favorably than the plaintiff." <u>Burks v. Wisconsin Department of Transportation</u>, 464 F.3d 744, 750–51 (7th Cir. 2006). Once a prima facie case is established, a presumption of discrimination is triggered. "The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for its action. <u>McDonnell Douglas</u>, 411 U.S. at 802; <u>Burks</u>, 464 F.3d at 751. When the employer does so, the burden shifts back to the plaintiff, who must present evidence that the stated reason is a "pretext," which in turn permits an inference of unlawful discrimination. <u>McDonnell</u>

24

Douglas, 411 U.S. at 804; Burks, 464 F.3d at 751.

Defendant has a number of arguments about why plaintiff cannot establish a prima facie case of discrimination under the indirect method, such as that plaintiff was not meeting defendant's legitimate expectations, some of the employment actions identified were not sufficiently adverse and plaintiff cannot identify a similarly situated individual who was treated more favorably. I need not address all of the parties' arguments on these issues, however, because defendant has offered legitimate, nondiscriminatory reasons for taking each of the adverse employment actions at issue. Scruggs v. Garst Seed Co., 587 F.3d 832, 838 (7th Cir. 2009) (court "can proceed directly to the pretext inquiry if the defendant offers a nondiscriminatory reason for its action").

Several of the adverse employment actions are related to defendant's decision to issue plaintiff the letter of reprimand for the smoking incident. Defendant has offered a legitimate explanation for issuing the letter of reprimand and for taking the subsequent actions that followed it. In particular, Spencer conducted an investigation, interviewed witnesses and concluded that plaintiff had violated company policy and then lied to hide her actions. In reaching his decision, Spencer was particularly disturbed that plaintiff changed her story during the course of the investigation, initially suggesting that a fellow employee was lying, and later claiming that she could not remember the events. After defendant issued the letter of reprimand, Hemberger and Ahlansberg believed that it would be improper to give plaintiff the supervisor of the year award and to interview her for a promotion. Because of the letter,

25

plaintiff could not be a member of the advisory council at the airport. Additionally, the letter caused plaintiff to receive a lower score on her annual evaluation. None of these explanations are related to plaintiff's gender.

If defendant issued the letter of reprimand and took the subsequent related adverse employment actions against plaintiff because it "honestly believed" she had smoked in the government vehicle and lied about it, plaintiff loses. Boumehdi v. Plastag Holdings, LLC, 489 F.3d 781, 792 (7th Cir. 2007) ("If [defendant] honestly believed the reasons it gave, however, [plaintiff] loses even if the reasons were foolish, trivial, or baseless."); Forrester v. Rauland–Borg Corp., 453 F.3d 416, 418 (7th Cir. 2006) ("If it is the true ground and not a pretext, the case is over."). Thus, to survive summary judgment, plaintiff must show that defendant's proffered nondiscriminatory reasons for taking the adverse employment actions are pretextual. This means that she must "identify such weaknesses, implausibilities, inconsistencies, or contradictions" in the asserted explanation such "that a reasonable person could find [it] unworthy of credence." Boumehdi, 489 F.3d at 792.

Plaintiff makes little effort to show that defendant's reason for issuing the letter of reprimand was anything other than its belief that plaintiff had smoked in a government vehicle and lied about it. She argues only that Spencer's investigation of the smoking incident was inadequate, that Hemberger and Ahlansberg were too swift to conclude that she was being dishonest about her ability to remember smoking in the vehicle and that she was punished too harshly. However, she does not deny that she provided inconsistent

statements during the investigation and ultimately refused to contradict Kalupa's versions of events.  Plaintiff's belief that those involved in the investigation should have treated her less harshly is not evidence that defendant's justification for reprimanding her was pretextual.  Atanus v. Perry, 520 F.3d 662, 674 (7th Cir. 2008) (plaintiff's "belief that her conduct . . . did not warrant a ten-day suspension [is insufficient] to show that the [employer] did not act honestly and in good faith"); Ineichen v. Ameritech, 410 F.3d 956, 961 (7th Cir. 2005) ("[I]t is not the court's concern that an employer may be wrong about its employee's performance, or be too hard on its employee.  Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie.") (quotations and citation omitted).

Additionally, plaintiff has offered no evidence from which a reasonably jury could conclude that defendant's proffered reasons for issuing plaintiff the low performance rating, denying her membership on the advisory council and denying the supervisor of the year award are pretextual.  In fact, plaintiff has not responded to defendant's explanations for these actions.  By failing to respond to defendant's arguments, plaintiff has waived any arguments in opposition and has failed to meet her burden at summary judgment of showing that the proffered explanations are pretextual.  Wojtas v. Capital Guardian Trust Co., 477 F.3d 924, 926 (7th Cir. 2007) ("A failure to oppose an argument permits an inference of acquiescence and 'acquiescence operates as a waiver.'") (quoting Cincinnati Insurance Co. v. East Atlantic Insurance Co., 260 F.3d 742, 747 (7th Cir. 2001)).

Plaintiff makes a brief argument regarding defendant's refusal to interview her for the security training instructor position, contending that defendant's "shifting explanation" about whether it was Hemberger or Ahlansberg who decided plaintiff should not be interviewed for the position is evidence of discrimination. Plt.'s Br., dkt. #66, at 10. However, it is irrelevant whether it was Ahlansberg or Hemberger who made the final decision about interviews because both Ahlansberg and Hemberger testified that plaintiff was not interviewed because of her behavior during the smoking investigation. Thus, plaintiff's task is to adduce evidence showing that this nondiscriminatory explanation is a lie. Plaintiff has not carried out this task.

The only employment actions not directly related to the letter of reprimand and the smoking incident are the letter of counseling plaintiff received related to releasing her baggage screening officers early and her removal from federal service. Defendant has offered legitimate, nondiscriminatory reasons for taking both of these actions. Defendant says that it issued the letter of counseling after Spencer watched plaintiff release her baggage officers early, despite having warned her recently about doing so. Plaintiff does not deny that Spencer investigated the incident and legitimately believed that she had disregarded his instructions. In fact, plaintiff sets out no argument in her opposition brief about why she believes defendant's explanation for the letter of counseling is pretexual. Therefore, plaintiff has waived any argument on this issue.

With respect to plaintiff's ultimate removal from federal service, defendant contends

28

that plaintiff's termination was prompted because of her behavior during the sexual harassment investigation and her subsequent failure to screen the high risk flight from Dane County Regional Airport to                                    The evidence shows that plaintiff failed to follow Spencer's instructions to refrain from talking to other employees about the sexual harassment investigation.  Additionally, the evidence establishes that plaintiff failed to screen a high risk flight and did not report her failure to defendant's coordination center, as required by defendant's screening and playbook protocol.  Plaintiff has not directed the court to any evidence, direct or circumstantial, from which a jury could conclude that defendant terminated her because of her gender and not her violations of company policies, such as evidence that another employee in her position who violated the same or similar policies or behaved the same way during an internal investigation was not terminated. Moreover, plaintiff does not assert in her opposition brief that defendant's proffered reasons for terminating her employment were pretextual.  By failing to adduce any evidence or assert any argument on this issue, plaintiff has failed to meet her summary judgment burden. Accordingly, defendant is entitled to summary judgment on all of plaintiff's discrimination claims.

## B.  Retaliation

There is some confusion in the briefs regarding the scope of plaintiff's retaliation claims.  Plaintiff alleges in her complaint that defendant retaliated against her after she filed

complaints about discrimination and assisted other employees in filing complaints. However, plaintiff has adduced no evidence that she assisted other employees in filing complaints about discrimination or that, if she did, Ahlansberg, Hemberger, Spencer or any other managers at Dane County Regional Airport were aware of her assistance. Stephens v. Erickson, 569 F.3d 779, 788 (7th Cir. 2009) ("[A] superior cannot retaliate against an employee for a protected activity about which he has no knowledge.").

In her brief in opposition to defendant's motion for summary judgment, plaintiff suggests that Ahlansberg retaliated against her because she reported comments he made in 2006 that she would be nothing more than a supervisor or a trainer. In particular, she states that she told Hemberger, defendant's administrative officer Michael Franczek and defendant's attorney Mark Rubic about Ahlansberg's comment, and then reminded Ahlansberg of the comment in 2007. However, plaintiff cites to no evidence showing that her objection to Ahlansberg's comment was a complaint about gender discrimination or any other class protected by Title VII. Thus, her alleged complaints in 2006 about Ahlansberg would not qualify as protected activity under Title VII. Gates v. Caterpillar, Inc., 513 F.3d 680, 687 (7th Cir. 2008) (""Although an employee need not use the magic words 'sex' or 'gender discrimination' to bring her speech within Title VII's retaliation protections, 'she has to at least say something to indicate her [gender] is an issue.'") (citing Sitar v. Indiana Department of Transportation, 344 F.3d 720, 727 (7th Cir. 2003)).

This leaves plaintiff's claim that defendant took adverse employment actions against

her in retaliation for the complaint she made to the EEOC in February 2008. The evidence shows that Hemberger, Ahlansberg and Spencer became aware of plaintiff's EEOC complaint on March 26, 2008. This means that the only adverse employment actions relevant to plaintiff's retaliation claims are those occurring after that date, namely, plaintiff's low performance rating in 2008, the letter of counseling in 2009 and her ultimate termination.

Plaintiff's retaliation claims fail for the same reason that her discrimination claims fail. In particular, plaintiff has failed to show that her EEOC complaints motivated Spencer to give her a low performance rating, issue her a letter of counseling and propose that she be removed from federal service. Leitgen v. Franciscan Skemp Healthcare, Inc., 630 F.3d 668, 673 (7th Cir. 2011) (to establish retaliation under Title VII, plaintiff must establish causal connection between protected activity and adverse employment action). Additionally, she has adduced no evidence to support her contention that her EEOC complaints motivated Ahlansberg and Hemberger to terminate her employment. Plaintiff suggests that Hemberger's mention of plaintiff's EEOC activity during an October 15, 2008 conversation is sufficient evidence that Hemberger terminated plaintiff because of her protected activity. However, the October 2008 conversation occurred 11 months before plaintiff was terminated and plaintiff has provided no evidence suggesting that she had a poor working relationship with Hemberger after that conversation. Moreover, as discussed above, defendant has offered nondiscriminatory and non-retaliatory explanations for its actions and plaintiff has failed to show that those explanations are untrue. Vance v. Ball State

31

University, 646 F.3d 461, 473 (7th Cir. 2011) (if employer establishes non-retaliatory reason for action, burden shifts to plaintiff to show that defendant's reason was pretextual). Therefore, defendant is entitled to summary judgment on plaintiff's retaliation claims.


## C. Hostile Work Environment

Finally, plaintiff contends that the following actions taken by Spencer, Hemberger and Ahlansberg subjected her to a hostile work environment in violation of Title VII:

- In 2004, 2006 and 2007, Ahlansberg made disparaging comments about plaintiff's gender and told her she would not advance in her career;

- In December 2007, Ahlansberg stomped his feet, clenched his fists, pointed at her, swung his arms and came in close proximity to her face;

- In 2008, Hemberger and Ahlansberg treated plaintiff unfairly during the smoking investigation and Ahlansberg pointed at her face and told her to confess to smoking in the government vehicle;

- In March 2008, Ahlansberg kicked plaintiff's chair;

- In October 2008, Hemberger yelled at plaintiff and accused her of hating management because she filed an EEOC claim;

- In June 2009, Ahlansberg belittled plaintiff when she asked if she could leave work early and told her to find a new job; and

- At a July 1, 2009 meeting at which plaintiff was present, Spencer said that the sexual harassment investigation could have been handled differently.

To succeed on her hostile work environment claim, plaintiff must prove that (1) her work environment was both objectively and subjectively offensive; (2) the harassment was based on her gender or protected activities; (3) the conduct was either severe or pervasive;

32

and (4) there is a basis for employer liability.  <u>Vance</u>, 646 F.3d at 469.

Plaintiff's hostile work environment claim fails.  First, the only incidents of harassment that plaintiff has connected to her gender or her EEOC activity are Ahlansberg's comments about plaintiff's gender and Hemberger's questioning of plaintiff regarding her EEOC complaints in October 2008.  These incidents of harassment do not rise to the level of a hostile work environment, which requires "conduct [that is] sufficiently severe or pervasive to alter the conditions of employment such that it creates an abusive working environment."  <u>Scruggs</u>, 587 F.3d at 840.  Factors relevant to this inquiry include the severity of the allegedly discriminatory or retaliatory conduct, its frequency, whether it is physically threatening or humiliating or merely offensive and whether it unreasonably interferes with an employee's work performance.  <u>Id.</u>  "Offhand comments, isolated incidents, and simple teasing do not rise to the level of conduct that alters the terms and conditions of employment."  <u>Id.</u>

Hemberger's single incident of yelling and Ahlansberg's occasional inappropriate comments, harsh tone and finger-pointing are more akin to "offhand comments" and "isolated incidents" than to behavior that is severe or pervasive.  Plaintiff has adduced no evidence that the incidents were physically threatening or that they interfered unreasonably with her work performance.  Thus, although they may have been offensive, they were not so offensive as to constitute a hostile work environment.  <u>Russell v. Board of Trustees of University of Illinois at Chicago</u>, 243 F.3d 336, 343-44 (7th Cir. 2001) (citing several court

33

of appeals' cases in which the court held that various statements "were not so offensive as to constitute actionable conduct"); <u>Adusumilli v. City of Chicago</u>, 164 F.3d 353, 361 (7th Cir. 1998) (ambiguous offhand comments, staring, attempts to make eye contact and four isolated incidents of inappropriate touching were not sever or pervasive); <u>Saxton v. AT & T</u>, 10 F.3d 526 (7th Cir. 1993) (holding that conduct "was not so severe or pervasive as to create an objectively hostile work environment").   Accordingly, I will grant summary judgment to defendant on plaintiff's hostile work environment claim.

ORDER

IT IS ORDERED that the motion for summary judgment filed by defendants Janet Napolitano and Transportation Security Administration, dkt. #43, is GRANTED. The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 3d day of May, 2012.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

34